IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MARGARET L. MORGAN            )
                              )
        Plaintiff,             )
                              )
vs.                           )   Case No. 08-0462-CV-W-ODS
                              )
HOUSEHOLD LIFE INSURANCE      )
COMPANY,                      )
                              )
        Defendant.             )

<u>ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendant's Motion for Summary Judgment (Doc. # 31). For the following reasons, Defendant's Motion is granted.

<u>I. BACKGROUND</u>

The above-captioned action is one for breach of contract and vexatious refusal to pay brought against the Defendant for failure to pay on a life insurance policy. The following facts are not in dispute. On September 25, 2006, Plaintiff Margaret Morgan and her husband, Sherman Morgan, applied for a credit life insurance policy associated with the refinancing of the mortgage on their home. The policy was on Mr. Morgan's life. Mr. Morgan had previously suffered a heart attack in 1996, which seriously damaged his heart. The damage he sustained was permanent and is referred to as cardiomyopathy. John L. Bean, D.O., was Mr. Morgan's primary care physician from 1978 until his death. Following Mr. Morgan's heart attack, Dr. Bean and Mr. Morgan discussed his heart problems, using the terms heart attack, cardiomyopathy, and mushy heart muscle. Doc. # 32, Exh. 6, p. 62. Dr. Bean prescribed a blood thinner to reduce the risk of clots forming in the damaged area of Mr. Morgan's heart from traveling to his brain. <u>Id</u>. pp. 37-38. The administration of the medication had to be closely supervised,

and Mr. Morgan visited Dr. Bean on practically a monthly basis to get it checked.

In 2003, Mr. Morgan was advised by two heart specialists to have a defibrillator implanted because of the damage to his heart. A letter from Dr. Maragos, a cardiologist, to Dr. Bean states, "I spent a long time talking with [Mr. Morgan] and his wife today. I think he would benefit from a defibrillator . . ." Id. p. 43. Dr. Bean also diagnosed Mr. Morgan with diabetes. Id. p. 24. For a time, Dr. Bean prescribed medication for Mr. Morgan's diabetes. Mr. Morgan also checked his blood sugar twice a day, and Dr. Bean ran blood tests every three months to monitor Mr. Morgan's diabetes. Dr. Bean also diagnosed Mr. Morgan with high blood pressure and discussed this diagnosis with Mr. and Mrs. Morgan. Id. p. 49.[1] Dr. Bean prescribed medication to help control Mr. Morgan's blood pressure.

The application for life insurance completed on September 25, 2006 contained questions regarding the medical history of both Mr. and Mrs. Morgan. The first question asked whether the applicant had been diagnosed as having, among other things, high blood pressure, heart disease, or diabetes. The box "no" was checked as to both Mr. and Mrs. Morgan. The second question asked whether the applicant, within the past five years, had been hospitalized or consulted a physician for any reason other than the common cold or flu. The box "no" was checked as to Mr. Morgan. The box "yes" was checked as to Mrs. Morgan; the explanation section indicated that Mrs. Morgan was diagnosed with a hernia in 2006. The last page of the application contains a verification statement declaring that the information contained in the application is "true and accurate to the best of my knowledge and belief." Mr. and Mrs. Morgan each signed in the signature box following this declaration. The signature box also contained the signature of Carol Birkey, the closing agent and witness. Doc. # 32, Exh. 1.

Mr. Morgan was illiterate and was not capable of reading the application himself.

---

[1] Plaintiff states this fact is in dispute by pointing to deposition testimony of Mrs. Morgan in which she states that when Mr. Morgan went to see Dr. Bean, his blood pressure was always normal. This non-expert medical statement by Mrs. Morgan does not contradict Dr. Bean's deposition testimony that he had diagnosed Mr. Morgan with high blood pressure.

However, Mrs. Morgan can read, and had always done the reading for the couple when they entered into contracts during the course of their marriage. Doc. # 36, Exh. 1, p. 83. The Morgans did not inform the loan company that Mr. Morgan could not read. Id. p. 35.

On October 31, 2006, Defendant issued a Certificate of Group Life Insurance to Mr. Morgan, effective as of September 29, 2006. Mr. Morgan died on October 31, 2007. The conditions resulting in his death included cardiopulmonary arrest (immediate cause) and cardiomyopathy (significant but indirect contributing condition). Certificate of Death, Doc. # 32, Exh. 4; Exh. 6, p. 63. Additionally, according to Dr. Bean, Mr. Morgan's diabetes and high blood pressure also contributed to his death. Id. p. 57.

On November 14, 2007, Defendant received Mrs. Morgan's claim for benefits under the policy. On April 9, 2008, Defendant informed Mrs. Morgan that it was denying her claim. Defendant concluded that Mr. Morgan did in fact have a history of serious health problems that should have been, but were not, divulged on the application for insurance. Defendant therefore rescinded the policy and returned the premiums that had been paid. Doc. # 32, Exh. 11.

Defendant seeks summary judgment on both of Plaintiff's claims premised on the affirmative defense of fraudulent misrepresentation due to the Morgans' failure to disclose Mr. Morgan's history of serious health problems on the application for insurance.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In

applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588-89 (1986); <u>Tyler v. Harper</u>, 744 F.2d 653, 655 (8th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

The elements of Defendant's fraudulent misrepresentation affirmative defense are:

1. Mr. Morgan represented to Defendant that (1) he had not been diagnosed with high blood pressure, heart disease, or diabetes; or (2) that in the five years before the application was taken, he had not consulted a physician for anything other than the flu or common cold, intending that Defendant rely upon such representation for the purposes of acquiring credit life insurance from Defendant;
2. The particular representation was false;
3. Mr. Morgan knew it was false at the time the representation was made;
4. The representation was material to acquiring life insurance from Defendant;
5. Defendant relied upon the representation in issuing the credit life insurance and in so relying, Defendant used that degree of care that would have been reasonable in Defendant's situation. M.A.I. 23.05.

*1. Representation*

Plaintiff contends there are material facts in dispute over whether Mr. Morgan even made the representations regarding his health history in the application for

4

insurance. Carol Birkey, the loan closer, testified that her practice at every closing is to read each question to the applicants and write down their answers verbatim. Doc. # 32, Exh. 2 p. 53. However, Plaintiff relies on the internally inconsistent deposition testimony of Mrs. Morgan in which she testified that:

- Carol Birkey did not help the Morgans with their application documents. Doc. # 34, Exh. B. p. 34;
- Nobody from the loan company read the application to the Morgans. Doc. # 34, Exh. B. p. 36;
- No one verbally asked the Morgans any medical questions on the application. Doc. # 34, Exh. B. pp. 23-28;
- Mrs. Morgan did not read the page with the health history questions on it. Doc. # 34, Exh. B. p. 29;
- The handwriting on the application was not Mrs. Morgan's. Doc. # 34, Exh. B. p. 35;
- The handwriting on the application was not Mr. Morgan's. Doc. # 36, Exh. 1, p. 18.
- Mr. Morgan could not read or write, except for his signature. Doc. # 36, Exh. 1, p. 18.
- Mrs. Morgan read some of the documents that the couple signed as part of the loan closing process to Mr. Morgan, but she does not recall which ones she read to him. Doc. # 34, Exh. B. p. 36;
- Mrs. Morgan did read the health history questions and she read most of them to Mr. Morgan. Doc. # 36, Exh. 1, p. 19.
- The couple filled out the application the best they could. Doc. # 34, Exh. B. p. 35;
- Mrs. Morgan did fill out the application for life insurance. Doc. # 36, Exh. 1, p. 17.
- Mrs. Morgan thinks she read the verification paragraphs at the end of the application. Doc. # 36, Exh. 1, p. 39.
- Both Mr. and Mrs. Morgan signed the application for life insurance. Doc. #

5

36, Exh. 1, p. 18.

While there is inconsistency in the above testimony as to who filled out the application, and whether it was read by Mrs. Morgan and/or read to the couple by Ms. Birkey or someone else, what is not in dispute is that Mr. and Mrs. Morgan signed the application for life insurance asserting that the information contained therein was true. A person is "presumed to know the contents of a contract he signs; and the fact that he does not read it or does not have it read to him before signing does not rebut the presumption." Bearden v. Countryside Cas. Co., 352 S.W.2d 701, 705 (Mo. App. 1961). "It is only where fraud, accident, or mistake intervenes that one may be relieved under such circumstances." Id. Plaintiff does not argue or provide evidence that Mr. and Mrs. Morgan were fraudulently induced into signing the life insurance application. Nor does Plaintiff suggest there was accident or mistake in completing the application. Therefore, by signing the application for life insurance, the Morgans are bound by the information contained therein. This is true even if Mr. Morgan could not read the application's contents himself. See id. at 706. Accordingly, there is no factual dispute that Mr. and Mrs. Morgan made representations in the application for life insurance intending that Defendant rely upon such representations for the purposes of acquiring credit life insurance from Defendant.

*2. Falsity*

Plaintiff contends there are material facts in dispute over whether the representations made in the application were false. Specifically, Plaintiff points to Mrs. Morgan's deposition testimony in which she asserts that Mr. Morgan did not have heart disease, high blood pressure, or diabetes. Doc. # 34, Exh. B, pp. 22-25. However, Dr. Bean testified that Mr. Morgan had serious and permanent heart problems. Doc. # 32, Exh. 6, pp. 37-38, 43, 62. He also testified that he had diagnosed Mr. Morgan with diabetes and high blood pressure. Id. pp. 24, 49. Mrs. Morgan is not competent to testify as to the specific medical diagnoses of Mr. Morgan. Therefore, Mrs. Morgan's non-expert testimony that Mr. Morgan did not have these health conditions does not

6

controvert Dr. Bean's testimony.[2] There is no factual dispute that Mr. Morgan did suffer from serious health problems or that his representation that he had not been diagnosed with high blood pressure, heart disease, or diabetes was false.[3]

*3. Knowledge of Falsity*

Plaintiff argues that Mr. Morgan did not know that he had been diagnosed with diabetes, high blood pressure, or heart disease.[4] In so arguing, Plaintiff suggests that Dr. Bean only told Mr. Morgan that he was "borderline" diabetic and had maybe used the phrase "glucose intolerant" sometimes. Doc. # 34, Exh. C, p. 61. However, Plaintiff ignores other portions of Dr. Bean's testimony. Specifically, in response to the question "you had told Mr. Morgan that he had diabetes; is that right?," Dr. Bean responded, "Yes." Doc. # 34, Exh. C, pp. 60-61. He also informed him that his diabetes was type two, adult onset, and mild in nature. Doc. # 34, Exh. C, p. 61. Mrs. Morgan does not testify that she accompanied her husband to all of his appointments with Dr. Bean, nor does she testify that she was present with him in the exam room during every visit. Therefore, Dr. Bean's testimony that he informed Mr. Morgan of this diagnosis is uncontroverted, and Mrs. Morgan is not competent to testify as to what Mr. Morgan was told or knew. Accordingly, there can be no dispute that Mr. Morgan knew he had been diagnosed with diabetes, and therefore that he knew his representation to the contrary was false.

Plaintiff also argues that Mr. Morgan did not know he had high blood pressure by again pointing to the deposition testimony of Mrs. Morgan in which she asserts that Mr.

---

[2] Additionally, Mrs. Morgan's deposition testimony contradicts her answer to an interrogatory in which she answered that Mr. Morgan was diagnosed with diabetes "approximately 10 years ago." Doc. # 36, Exh. 2, Interrogatory 12.

[3] Plaintiff does not dispute the falsity of the representation that Mr. Morgan had not consulted a physician within the past five years for issues beyond the flu or common cold.

[4] Plaintiff does not suggest that Mr. Morgan did not know that he had visited a physician within the previous five years for some reason other than a flu or cold.

7

Morgan did not have high blood pressure. However, during Dr. Bean's deposition he was asked, "So, during the course of your treatment of Mr. Morgan you diagnosed him as having high blood pressure." He answered, "yes." He then stated that he informed Mr. Morgan of this diagnosis and that he also discussed Mr. Morgan's high blood pressure with Mrs. Morgan. Doc. # 32, Exh. 6, p. 48. Again, Mrs. Morgan does not claim have been present when all information regarding Mr. Morgan's health was imparted to Mr. Morgan, so Mrs. Morgan is not competent to testify as to what Mr. Morgan was told or knew. Therefore, Mrs. Morgan's non-expert testimony that Mr. Morgan did not have high blood pressure does not contradict Dr. Bean's testimony. There is no dispute, therefore, that Mr. Morgan knew his representation that he had not been diagnosed with high blood pressure was false.

Finally, Plaintiff argues Mr. Morgan did not know he had heart disease. Mrs. Morgan testified that Mr. Morgan did not think he had "heart disease." Doc. # 34, Exh. B, p. 22. Additionally, Dr. Bean testified that he had discussed with Mr. Morgan his heart problems using the terms "heart attack," "cardiomyopathy," and "mushy heart muscle," but not "heart disease." Doc. # 32, Exh. 6, p. 62. There can be no dispute that Mr. Morgan knew he had heart problems. Following his heart attack in 1996, Mr. Morgan was prescribed a blood thinner that required monthly visits to Dr. Bean for monitoring. Mr. Morgan and Mrs. Morgan also were advised that Mr. Morgan should have a defibrillator implanted. Armed with this knowledge, the Morgan's response to the question about his heart should have elicited a more forthcoming response. However, the Court need not decide whether Mr. and Mrs. Morgan's knowledge of Mr. Morgan's serious and permanent heart problems should have caused them to answer "yes" as to whether Mr. Morgan had been diagnosed with "heart disease," because his knowledge of his other health problems is not in dispute.

*4. Materiality*

Missouri Revised Statute § 376.580 states that a misrepresentation made in obtaining a life insurance policy shall only be deemed material if the matter misrepresented actually contributes to the death of the insured. Plaintiff argues that a

8

genuine issue of material fact exists as to whether Mr. Morgan's heart disease, diabetes, or high blood pressure actually contributed to Mr. Morgan's death. However, Dr. Bean testified that Mr. Morgan's diabetes and high blood pressure contributed to his death, Doc. # 32, Exh. 6, pp. 57-58, and that his cardiomyopathy indirectly contributed to his death. Doc. # 32, Exh. 6, p. 60. Plaintiff does not identify any evidence that disputes Dr. Bean's testimony.

Plaintiff argues, however, that § 376.580 requires that the issue be resolved by a jury and precludes a decision on summary judgment. The Court disagrees. First, the Missouri legislature cannot alter Rule 56 of the Federal Rules of Civil Procedure. See Hanna v. Plumer, 380 U.S. 460, 471 (1965); Burlington No. R.R. Co. v. Woods, 480 U.S. 1, 6 (1987). Additionally, in construing identical language from a previous version of § 376.580, the Missouri Supreme Court stated that "[o]f course the power remains in the court to determine whether there is any evidence which authorizes submission of the case to the jury." Winger v. General Am. Life Ins. Co., 345 S.W.2d 170, 182 (Mo. 1961). There are no facts in dispute to warrant submission of the issue to a jury that the health conditions Mr. Morgan misrepresented on the application for life insurance actually contributed to his death.

*5. Reasonable Reliance*

Finally, Plaintiff argues that the application process proves that Defendant could not have reasonably relied on Mr. Morgan's misrepresentations. Defendant's loan closer, Carol Birkey, testified that it is her practice to read verbatim all the application questions, as well as the declaration of truthfulness, to applicants. Doc. # 34, Exh. 1, p. 25. She also stated that she always writes down the answers given by life insurance applicants, regardless of whether she believes the answers are accurate or truthful. Doc. # 34, Exh. 1, p. 23. Ms. Birkey further stated that she assumed that an independent third party or Defendant would "go over the responses of the applicants." Id. It is undisputed that no one from Defendant did an independent investigation into whether the answers provided by the Morgans were true. Likewise, Defendant had the opportunity to have access to the Medical Information Bureau, which may have

9

provided information on whether the Morgans had answered truthfully, but Defendant did not subscribe to the service at the time the Morgans applied. Plaintiff argues that Defendant's process is ineffective at obtaining accurate information, and therefore, that Defendant did not use reasonable care in relying on the Morgan's misrepresentations.

However, "[w]hen answers to an application are complete on their face, the insurer is not obligated to make further inquiry." Prudential Prop. and Cas. Ins. Co. v. Cole, 586 S.W.2d 433, 436 (Mo. App. 1979). The cases cited by Plaintiff establishing a duty to investigate are distinguishable because in those cases there was information in the application that should have put the insurer on notice that other information provided was false. See, e.g., Berry v. Equitable Fire & Marine Ins. Co., 298 S.W. 63, 69 (Mo. 1927). Here, there was nothing in the application that should have alerted Defendant that the Morgans had misrepresented Mr. Morgan's health history.[5] There is also no evidence that Defendant's agent, Ms. Birkey, altered the information provided by the Morgans or knew that the health information they provided was untruthful. See, e.g., Phoenix v. Mutual Life Ins. Co. v. Harmegnies, 110 F.2d 20, 25 (8th Cir. 1940); Coleman v. Central Mutual Ins. Ass'n, 52 S.W. 22 (Mo. App. 1932); Toler v. Missouri Ins. Co., 243 S.W.2d 788, 792 (Mo. App. 1951). Accordingly, there is no evidence that Defendant did not reasonably rely on the misrepresentations provided by the Morgans.

## IV. CONCLUSION

There are no material facts in dispute, and Defendant is entitled to judgment as a matter of law on its fraudulent misrepresentation affirmative defense. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's breach of contract and vexatious refusal to pay claims is granted.

---

[5] Plaintiff points out that Mr. Morgan's weight was stated as 145 pounds on the application, when he actually weighed over 200 pounds. This information, while inaccurate, would not have put Ms. Birkey or Defendant on notice that other information in the application was incorrect.

10

IT IS SO ORDERED.

                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, JUDGE
DATE: May 5, 2009                    UNITED STATES DISTRICT COURT